FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ JUL 24 2007 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
JENNIFER MYERS, individually and on behalf
of all others similarly situated,

                 Plaintiffs,

-against-

THE HERTZ CORPORATION,

                 Defendant.
------------------------------------------------------------ X

**MEMORANDUM**
**DECISION AND ORDER**

02 Civ. 4325 (BMC) (MLO)

**COGAN**, District Judge.

Plaintiff Myers, on behalf of herself and all others similarly situated, filed this action alleging violations of the Federal Fair Labor Standards Act ("FLSA") and the New York State Labor Law ("NYSLL") against Hertz Corp. (collectively "plaintiffs"). Presently before the Court is plaintiffs' [184] motion for class certification pursuant to Fed. R. Civ. P. 23. For the reasons that follow, plaintiffs' motion is DENIED.

## BACKGROUND

The background of this case has been previously set forth in Judge Hurley's March 15, 2005 Memorandum of Decision and Order (the "March 15 Order"), his March 27, 2006 Memorandum of Decision and Order (the "March 27 Order") and his May 18, 2006 Memorandum of Decision and Order (the "May Order"), familiarity with which is assumed.[1]

Plaintiff Myers was employed as a Station Manager at Hertz's Long Island rental operation. She commenced this action on behalf of herself and all other similarly situated

---

[1] This case was reassigned to the undersigned in July, 2006.

current and former Hertz employees for unpaid overtime under the FLSA and for several violations of the NYSLL. Subsequent to filing this action, four other station managers who also worked at the Long Island location opted into this action (the "opt-in plaintiffs"). By Orders dated March 15, 2005 and March 27, 2006, Judge Hurley denied in part and granted in part defendant's motion for summary judgment. As a result, plaintiffs' only remaining claims are for non-payment of overtime in violation of the FLSA and for untimely payment of wages (limited to the unpaid overtime alleged under the FLSA) under the NYSLL § 191.

On May 6, 2005, having survived summary judgment, plaintiffs moved for entry of an order pursuant to 29 U.S.C. § 216(b) granting leave to send a notice of action to the putative nationwide FLSA opt-in class. The opt-in class consisted of all current and former employees that were employed in the Station Manager titles (i.e., Senior Station Manager, Station Manager, and Station Manager-B) beginning from August 1, 1999 to the present. All Hertz employees, including the Station Managers, were subject to Corporate Policy 2-50. This is the policy pursuant to which Hertz deemed plaintiffs to fall under the managerial exemption to the FSLA. The policy essentially restates the applicable FLSA provisions and was applied without any individual investigation. Judge Hurley denied plaintiff's motion, holding that:

> [T]he Court finds that Plaintiff's motion suffers from a fatal flaw that further discovery cannot cure: because liability as to each putative plaintiff depends upon whether that plaintiff was correctly classified as exempt pursuant to Corporate Policy 2-50, any collective action would require the Court to make fact-intensive inquiry into each potential plaintiff's employment status.

This determination rests on Judge Hurley's extensive consideration on the summary judgment motion of the factors used in determining whether an employee's duties render her exempt under the FLSA. The test consists of two parts, the salary test and the "duties" test, both of which must be satisfied for the exemption to apply. Having determined that the Station

Managers satisfied the salary test for exemption, Judge Hurley evaluated the component factors of the "duties" test: "(1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with non-managerial duties; (3) the frequency with which the employee exercises discretionary powers; (4) the employee's relative freedom from supervision; and (5) the relationship between the employee's salary and the wages paid other employees for non-exempt work." Reading Judge Hurley's decisions together, it is clear he found that these factors required individualized inquiry and thus precluded certification of an opt-in class.

Plaintiffs, having been denied a collective action on their substantive claims, moved for reconsideration of that Order. Judge Hurley denied reconsideration on July 14, 2006. While the motion for reconsideration was pending, Magistrate Judge Orenstein held a status conference at which plaintiffs sought permission to continue with nation-wide and state-wide class discovery with regard to the putative Fed. R. Civ. Pro. 23 class on the state law claim. Relying upon Judge Hurley's denial of opt-in notification, Judge Orenstein denied the discovery. He reasoned that Judge Hurley's Order precluded nation-wide discovery in connection with the opt-in collective action, and that because the state class action was entirely derivative of the FLSA claim, it also precluded state-wide class discovery.

This determination spawned a flurry of applications from both sides. On July 24, 2006, plaintiffs filed a notice of objection to Judge Orenstein's discovery Order. Plaintiffs simultaneously made an application before me for a pre-motion conference to discuss their contemplated motion for certification of the state-wide class. In this same application, plaintiffs sought leave to conduct the very same discovery already denied by Judge Orenstein. Plaintiffs then filed an application seeking a pre-motion conference to discuss their contemplated motion

to certify Judge Hurley's May Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Defendant, for its part, filed opposition to each of plaintiffs' requests.

At a pre-motion conference held on August 11, 2006, I overruled the objections to Judge Orenstein's discovery Order and set a briefing schedule for the instant motion without further discovery.

## DISCUSSION

The seemingly complex nature of the instant motion in this otherwise straightforward wage case results from the combination of Judge Hurley's summary judgment decisions, opt-in class notification decisions and the fact that plaintiffs' remaining state law claims are purely derivative of their federal claim. The result is that plaintiffs are left with state-law class claims that have been severed from their primary element – that the class is entitled to the unpaid overtime in the first place.

Pursuant to the "law of the case" doctrine, I will not revisit Judge Hurley's decisions. See Chen v. Street Beat Sportswear, Inc., 364 F. Supp. 2d 269, 294 (E.D.N.Y. 2005). Thus, beginning from the fact that plaintiffs' collective FLSA claim has been denied, defendant makes several arguments ranging from lack of standing to failure to satisfy the requirements of Rule 23.

However, the motion before me is limited to class certification under Rule 23. Defendant has not moved to dismiss and its arguments as to jurisdiction or merit are misplaced here. Therefore, the discussion below is limited to the Rule 23 analysis.

## I. Standard of Review

Plaintiffs, moving for class certification under Fed. R. Civ. P. 23, must satisfy the requirements of Rule 23(a) and one of the three categories of Rule 23(b). In re Initial Public Offering Securities Litigation, 471 F.3d 24, 41 (2d Cir. 2006). Specifically, plaintiffs must satisfy the requirements of numerosity, commonality, typicality and adequacy of representation. Plaintiffs have determined to move for certification under Rule 23(b)(3), requiring them to show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

In determining whether plaintiffs have met their burden, I am guided by the Second Circuit's recent decision in In re Initial Public Offering Securities Litigation, 471 F.3d at 41, holding that

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merit issue, even a merit issue that is identical with a Rule 23 requirement; (4) in making such determination, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

This language rejected the reading of prior Second Circuit precedent as only requiring "some showing" to satisfy the Rule 23 requirements. Id. at 42.

Finally, in "'determining the propriety of a class action, the question is not whether plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" Torres v. Gristede's Operating Corp., No. 04 Civ. 3316, 2006 WL 2819730, at *8 (S.D.N.Y. Sept. 29, 2006) (quoting In re Visa Check/Master Money Antitrust Litig., 280 F.3d 124, 133 (2d Cir. 2001)).

## II. Numerosity

To satisfy this requirement the prospective class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs approximate, without knowing, that a state-wide class would include some 148 current and former employees. This estimate is based on three facts: (1) defendant admits that a nation-wide class would consist of 2,280 class members; (2) according to the 2000 U.S. Census, New York State accounts for 6.54% of the "private non-farm employment" in the country; and (3) Hertz's website shows that it has 60 locations in New York State. Defendant counters that because this estimate is "predicated on pure speculation or bare allegations" it does not meet the standard for class certification. (Defendant's Brief at 13). Defendant's argument fails for several reasons.

First, defendant knows exactly how big the potential class is and has neither argued that plaintiff's estimate is wrong, nor that a class of approximately 148 employees would be insufficient to satisfy numerosity. Defendant has only argued that plaintiffs may not estimate. The case law, however, says that they may. Plaintiffs need only provide a reasonable estimate and may rely on reasonable inferences drawn from available facts, "particularly where[, as here,] more precise information about the size of the class is within the defendants' control." Novella v. Westchester Cty., No. 02 Civ. 2192, 2004 WL 3035405, *5 (S.D.N.Y. 2004) (citing German v. Fed. Home Loan Mortgage Corp., 885 F. Supp. 537, 552 (S.D.N.Y. 1995)).

6

Second, even if we assume that each Hertz location in New York employed only one Station Manager during the relevant time period, that would add up to a class of at least 60 – enough to raise the presumption that ordinary joinder of all members would be impractical. Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 370 (S.D.N.Y.) (noting that a class of 40 or more raised the presumption of numerosity and finding a class of approximately 125 satisfies numerosity).

Therefore, I find that because the proposed class reasonably contains at least 60 potential plaintiffs and may contain approximately 148, numerosity is satisfied.

### III. Commonality and Typicality

The requirements of Rule 23(a)(2), that "questions of law or fact [be] common to the class," and Rule 23(a)(3), that the "claims and defenses of the representative parties [be] typical of the claims or defenses of the class," tend to overlap and are often considered together. Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999).

"Generally, courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members." Trinidad v. Breakaway Courier Systems, Inc., No. 05 Civ. 4116, 2007 WL 103073, at *5 (S.D.N.Y. Jan. 12, 2007). Here, all class members make the same claim – that their overtime wages were not paid in a timely fashion, indeed, never paid at all, in violation of NYSLL § 191. To this extent, all of the class claims are identical and not in dispute – defendant does not deny that no overtime was paid. The real issue in this case, however, is whether any of the putative class members were ever entitled to overtime wages under the FLSA.

7

Whether the exemption applies to the proposed class members is exactly the question that Judge Hurley determined would require "fact-intensive inquiry into each potential plaintiff's employment status" under the FLSA. Judge Hurley reached this conclusion after applying the FLSA "similarly situated" test, which is "significantly less strict" then the test under Rule 23. Downer v. Franklin County, No. 02 Civ. 0157, 2003 WL 22319418, at *2 n. 1 (N.D.N.Y. July 31, 2003) (citing Heagney v. European American Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)). The fact that plaintiffs' Rule 23 class will be smaller and only encompass Hertz locations in New York State as compared to the nation-wide FLSA class does not cure the necessity for individualized proof identified by Judge Hurley. This finding is as detrimental to plaintiffs' state-wide class claim as it was to their FLSA collective action claim and equally incurable by further discovery. See Diaz c. Electronic Boutique of America, Inc., No. 04 Civ. 840E, 2005 WL 2654270, *6 (W.D.N.Y. Oct. 17, 2005) (denying class certification and opt-in notification on the basis that proof of exemption would require individualized factual inquiry).

Plaintiffs are quick to point out that, irrespective of Judge Hurley's decision, Rule 23 case law permits certification where differences among the class members of hours worked, work performed and wage paid merely result in differences in the amount of damages due. Iglesias-Medoza, 239 F.R.D. at 371. Plaintiffs' reliance on such cases is unavailing. For example, in Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81 (S.D.N.Y. 2001), the court correctly distinguished between differences among putative class members that go to the measure of damages and differences that go to "the central specific claim presented by the Plaintiffs as a group." Here, as Judge Hurley found, differences in the duties performed, and in the proportional mix of duties performed go directly to the "central" claim. See Judge's Hurley's March 27 Order, discussing the "duties" test for determining exemption status under the FLSA.

Plaintiffs also argue, as they did before Judge Hurley, that because Hertz applies a single policy of categorizing all Station Managers as exempt, the overtime issue is similar among all class members. This reasoning is superficial. Plaintiffs' allegation is that, whatever Hertz says Station Managers do or should do, what they actually do on a daily basis puts them outside the exemption.[2] This means that proof of liability will not turn on what Hertz did or did not do vis-à-vis the entire class, but rather what each member of the class does on a daily basis. This is precisely what Judge Hurley found when he determined that the putative opt-in class members were not similarly situated. This is also why the defect cannot be cured with additional discovery.[3]

The individual plaintiffs (Meyers and the four opt-in plaintiffs) were all employed at the same Hertz location on Long Island and performed the same work. Because they all worked at the same job in the same location, the proof of their claims will generally overlap and be limited. The members of the class, on the other hand, would be widely dispersed throughout the State of New York at some 60 locations. The only fact that the two groups would have in common is Hertz's corporate policy, which is already part of the record and not determinative of the claims.

---

[2] The testimony of Irwin Pollack, Division vice-President Employee Relations Vehicle and Leasing the Americas and Pacific, is not to the contrary. Pollack only testified that no matter what other tasks a Station Manager performs on a daily basis or otherwise, his or her primary function is to manage the operation. Indeed, it seemed the main goal of plaintiffs' counsel to get Pollack to admit that if Station Managers spent enough time performing non-exempt tasks, it would no longer be appropriate to categorize them as exempt. See, e.g., Pollack T: 27-30. (Q: "Is there a certain amount of time in your mind whether by hours or percentage of the working day, that a station manager is at the location that he or she can spend washing cars, cleaning cars, moving cars and driving the bus? Is there a certain line at which you say it is no longer occasional?"). This type of inquiry, as Judge Hurley found, is inherently individualized.

[3] At an August 11, 2006 pre-motion conference on this motion, without objection or correction by plaintiffs' counsel, defense counsel represented to the court that this case was "ready for trial." Meanwhile, plaintiffs have argued on this motion that further discovery is required so that they can attempt to show that Station Managers throughout the state perform the same tasks and, thus, that the exemption analysis is subject to generalized proof. As Judge Hurley did with regard to the FLSA claims, I find no indication in the record that further discovery will be able to cure the identified deficiencies.

Different Hertz locations will necessarily operate under different circumstances and involve different witnesses.

Plaintiffs point to the deposition testimony of Robert Ciccotto, the City manager of the Long Island Operation, as evidence of the homogeneity of Station Managers' duties across Hertz locations. Mr. Ciccotto's testimony, however, does not entirely support this proposition. While he stated that Station Managers at different locations do "more or less the same" things, he also testified that there are "some variances." Specifically, with regard to the Long Island location, where all of the individual plaintiffs worked, he testified that Station Managers who transfer in "need to be assimilated on how the operation runs." He also testified that "the operation is different. Every place is unique, I believe, in their own way." He went on to specifically distinguish the Long Island location, stating:

> Well, you've got a place like Kennedy Airport where you don't run transporters. The business comes to you. You don't have multiple locations. In a place like Long Island you've got 16 locations. There's a whole new distribution operation for managers.

(Ciccotto Tr. at 107-108).

Plaintiffs try to get around the individualized nature of the exemption analysis by arguing that their allegations "likely will not require analysis of how much time each class member spends on non-exempt work," because, "virtually all of the tasks performed…are in fact non-exempt." (Plaintiff's Reply at 3). Plaintiffs further argue that the real issue for trial will be whether those common non-exempt tasks "require the exercise of a sufficient degree of discretion, if any, to qualify as exempt." Id.

This formulation of the issues for trial has to be measured against the test for determining exempt status. Although plaintiffs state in conclusory fashion that an analysis of time spent doing specific tasks is not "likely" to be necessary, the "duties" test, in fact explicitly requires the consideration of (1) the amount of time spent doing managerial duties, and (2) the frequency with which the employee exercises discretion. The test also requires a consideration of the relative importance of the managerial and non-managerial duties – also involving a determination of the mix of duties performed over time by an employee.

Finally, typicality requires that "the claims of the class representative be typical of those of the class, and is therefore satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997). Although the legal claims alleged and the sole defense to them is the same throughout the class, proof of liability will require individual factual analysis.

Therefore, for the same reason that plaintiffs fail to meet the commonality requirement, they likewise fail to meet the typicality requirement.

## IV. Adequacy of Representation

Fed. R. Civ. P. 23(a)(4) requires that (1) class representatives "demonstrate that they have no interests that are antagonistic to the proposed class members, and (2) class counsel be qualified. Jankowski v. Castaldi, No. 01 Civ. 0164, 2006 WL 118973, *3-4 (E.D.N.Y. Jan. 13, 2006). Defendant does not content that proposed class representative, Myers, has any interest that conflicts with the class. Instead, Hertz suggests that because one of the two attorneys put forward as prospective class counsel is related to one of the opt-in plaintiffs, who is not put

forward as a representative, plaintiffs' counsel has a conflict. The number of steps in Hertz's argument alone demonstrates that the specter of conflict it attempts to summon is too insubstantial to be the basis of excluding one of plaintiffs' attorneys. Therefore, this requirement is satisfied.

## V. Rule 23(b)(3)

Plaintiffs bring their state law class action under Fed. R. Civ. P. 23(b)(3), which provides that plaintiffs show that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fair and efficient adjudication of the controversy."

The predominance inquiry is similar to the commonality and typicality requirement of Rule 23(a)(3), although more demanding, and "test[s] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623-24, 117 S.Ct. 2231, 2249-50 (1997). "[T]o meet the predominance requirement, a plaintiff must establish that 'the issues that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof.'" In re Visa Check/MasterMoney Antitrust Litigation, 280 F.3d 124, 136 (2d Cir. 2001) (quoting Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1233 (11th Cir. 2000)).

Because predominance is a similar, but more demanding test than commonality, plaintiffs fail to satisfy it for the same reasons they fail to satisfy commonality. See Amchem, 521 U.S. at 623-24, 117 S.Ct. at 2249-50. As discussed above, the main issue in this case, whether or not the exemption applies, is not subject to generalized proof.

Plaintiffs must also show that proceeding as a class action would be "superior" to other options. Fed. R. Civ. P. 23(b)(3). I am not convinced that this is the case. Plaintiffs suing under the NYSLL who wish to pursue a class action must make at least one significant sacrifice over people who sue individually -- waive their entitlement to recover liquidated damages. Section 901(b) of the New York Civil Practice Law and Rules precludes a class action based upon a statute "creating or imposing a penalty, or a minimum measure of recovery," unless that statute also provides for recovery in a class action. The NYSLL does not provide for suit by class action. Therefore, liquidated damages are unavailable to class plaintiffs alleging a violation of NYSLL. See Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 373-74 (S.D.N.Y. 2007) (holding that to avoid § 901(b), "New York law allows plaintiffs to waive their liquidated damages claim for overtime wage class actions").

Therefore, even if plaintiffs could satisfy the other requirements of Rule 23, it is unclear if a class action would be superior.

## CONCLUSION

For all the reasons stated above, plaintiff's motion for class certification is DENIED.

**SO ORDERED.**

/s/(BMC)

U.S.D.J

Dated: Brooklyn, New York
July 24, 2007

13